Court of Appeals. Okay. I just didn't know if you wanted to. There we go. Good morning, Your Honor. It's Jason Warren on behalf of Mr. Porter. The question before the Court today is kind of the extent of AB102A in terms of what would constitute while in performance of his duties for Mr. Porter. Counsel, before you get there, what's very odd in this case among many other oddities is that the form that was filled out is unsigned. All parts of it are unsigned. The FECA form? Yes. Is there in the record something that has been signed that we're missing here? Mr. Porter did not submit the FECA claim. That was done, I believe, by his supervisor or Bureau of Land Management. Well, they didn't sign it either. Nobody signed it as far as I can tell. We did not even know it existed until Mr. Porter was served with the denial based on failure to provide supporting materials. I thought the position was, your client's position was that he got notice that he needed to pursue the claim and that he intentionally chose not to pursue it because he always understood this was going to be a Federal Tort Claims Act case. No, Your Honor. What happened was we commenced the litigation in the FECA claim. While that was going on is when he received that denial letter. He wasn't sure what was going on so he kind of responded to it and then he brought it to us and we had no idea what was going on because no one had submitted an FECA claim. Okay. Can I back up about the initiating litigation because I looked and looked, but I think I finally found the claim form 95. You or somebody on behalf of your client did file a claim form 95 to initiate the Federal Tort Claims Act, yes? The Federal Tort Claims Act, yes. Our office brought that case. Okay. And it was denied September 28th. So there's no, it hasn't been argued at all in the briefing so I'm assuming that it's at least for what we're doing today, there's no concern that it was untimely or not filed properly. No, I do not believe so, Your Honor. I believe the only issue before the Court today is the jurisdictional issue concerning whether this is an FECA claim or substantial, there is a substantial likelihood it's an FECA claim that should have been sent through that system to the Secretary of Labor as opposed to commencing the FECA litigation. This case strikes me as a classic case that would be appropriate for mediation because clearly there's an injury, clearly there appears to be negligence and it's just a matter of bouncing it through door A or door B. And I assume that your client would be willing to do that and when it's time for the government, I'll ask them whether they'd be willing to do that. We have always been open to trying to resolve this claim amicably, Your Honor, in terms of whether it's FTCA or the Tort Claims Act, if you look at 8102A, it says it must have been a while performance of his duties. There is no more antithesis, I think, of being in performing your duties than being home at 4 o'clock in the morning in your robe and slippers. Well, the problem is also in theory, someone could be on call 24 hours a day and the claim form, the unsigned whatever it is, seems self-contradictory because in one place it says, no, this was not in performance of duties, but in another place it says the hours of work are 8 a.m. to 8 a.m. Which would essentially make him an on-call employee at all times. Or a night shift or something, but we don't know what that is. It looks like the district court didn't notice the 8 a.m. to 8 a.m., is that right? I'm not sure, I do not ever put words in a judge's, I do not know. Was that argued, was that a? I was not the attorney present at the argument, Your Honor, that attorney is no longer with our firm, but in reviewing the records, I think it was submitted. I don't know if that was the basis of the court's decision to dismiss the case for lack of jurisdiction in terms of. Well, if we don't send this to mediation, shouldn't we vacate and remand to have some of these cases, some of these issues determined? And I would certainly have no objection to that either, Your Honor, I'd be more than happy to brief this at the district court level and argue the case. There's so many factual questions that we can't resolve. I understand that, Your Honor. I think the district court was concerned that typically the secretary decides in the first instance, whether it's a workers' comp, a claim or not, do you want to respond to that? Because I think that's what your opponent might. Yes, Your Honor, it has to be a substantial or colorable claim for that requirement to kick in. It's the two-part test for FECA. Is there coverage? And then is the injury itself covered? First part is jurisdictional, that's for district court. That's not a decision for the secretary of labor. That's why we argued it there. And it would be our position that the way that the test is written, it has to be in both cases. I believe Mo, if you look at Reap, both those cases, I believe Mo, she was actually on duty and fled when the gunfire began. And in Reap, he was actually walking into his, I think, police station to change into his uniform. So that is something that you actually have to do in performance of your duties. Your argument is even if he was on call, he wasn't actually performing any duty. That's correct, Your Honor. The test in 8102A is explicit. While in the performance of his duty. While in performance. And I don't think there is any argument that at 4 o'clock in the morning at his house where he collapsed. Well, but that's what we don't know. And that's Judge Wardlaw's point. In terms of... Well, you just mentioned a minute ago, you know, in your slippers in your house. We don't know that. Oh, well, I believe it's uncontested that this injury occurred after he collapsed at his own residence at approximately 4 o'clock in the morning. Yes, sir, but we don't know what his duties was. That's why it matters that he sleeps from 8 a.m. to 8 a.m. We just don't know. We don't have that record here. That's Judge Wardlaw's point, I think. But we do have the statement of his supervisor saying, was he on duty? And his supervisor says no. And I understand the courts, it's almost circular going back and forth, Your Honor. But in terms of his job performance, his duties took place at the park. There was nothing remote. There was nothing he did online. There was not an on-call phone for him in case there was an emergency at the park. So you're giving us all kinds of information that we don't have. And I do understand that, Your Honor. And part of the problem of that is this case was dismissed so early on that very little discovery and exchange took place between the parties. Right. Did you want to... I'm sorry, go ahead. Was there oral argument or any hearing or anything on this case, or was it just on the briefs submitted? And again, I might almost lean on the United States for that, because the attorney in question is not with my firm anymore. But I believe that it was dismissed by minute order. I don't think there was argument. No, I believe it was dismissed by minute order. Okay. Thank you. Do you want to save some rebuttal time? I would like to, Your Honor. Thank you. Good morning. Lindsay Roberts on behalf of the United States. I think the one thing that we all agree on in this case is if the plaintiff alleges a colorable claim or a claim that arguably falls under FECA, the district court lacked jurisdiction to hear the FTCA claim. Part of the issue here is that plaintiff's factual arguments have evolved as this case has progressed. Well, counsel, it seems to me that there's a lot of game playing on the part of the government in this case, and possibly on both sides, but this form that's in the record is unsigned, does not appear to have been prepared by the claimant. And it's hard to see how other than this one, what may or may not be a typo, 8 a.m. to 8 p.m., otherwise doesn't show anything colorable about being possibly a FECA claim. So the plaintiff's position before the district judge and the factual evidence that the district judge had before him was that, in fact, he did initiate the claim. This was in his opposition to the motion to dismiss. He said, I initiated the claim under FECA. I took the appeal. So the evidence before the district court was at least at that time, the plaintiff thought he had the claim. That doesn't answer my question as to why this could possibly be colorable, given what is in the record in front of us. How is that colorable? Don't tell me what they said below. I want to know from your lips why that is potentially a claim that falls within the statutory requirement of being while in the performance of duties. So he's alleging physical injury that took place. Understandably, I hear the court's hesitation because the form isn't signed. The only evidence is that his work schedule was 24 hours a day, Monday through Friday. There's nothing to contradict that. That's his work schedule. Is there anything that is in this record that suggests that he was in the performance of his duties at the time he collapsed at 4 in the morning at home? There's nothing that suggests that either way. Counsel, on ER 52, there is something that contradicts. There's the 8 a.m. to 8 a.m. As you indicated, you interpret that, I think reasonably, that it could be a 24-hour schedule perhaps. But just below that, the form indicates that the employee was at his residence, not on duty. Right. And that he is a park ranger. Correct. He's a law enforcement officer whose duty hours are 24 hours a day. So just if you could return, please. You just said, I think there's nothing to contradict that he had a 24-hour schedule and that he was on duty. But it says right here he was in non-duty status. The form is internally inconsistent, going back to Judge Graber's very first question. And I'm not sure I understand your response to that. I don't disagree that it's internally inconsistent. I can't answer who made that statement, why it was made. I don't know the circumstances of that. But the case law is clear that that determination, that coverage in and of itself question, that question of whether was this done in the performance of duty, that's a question for the Secretary of Labor. Typically, right? Correct. Typically. Yes. Does that mean the court can't make it? And if so, could you give me that authority? So unless, as a matter of law, the court can say that this would fall outside of his scope of duty, that is not a question that should be answered by the courts. It should be answered. So here's a question for you that's, I think, going towards what Judge Christoff is getting at. But is it your position that someone who is asleep at home, who may be on call, but who is asleep at home, is in the performance of duty within the meaning of the statute? It's not, the government in this case isn't taking a position at all what Mr. Porter was doing at that time. That's not answering my question. If you would like to think of it as a hypothetical, that's great. A person is on call 24 hours, but they're home asleep when they're injured, or they're going to the bathroom at home when injured. Is that in performance of duty within the meaning of the statute or not? I don't want to not answer you, but I think it would depend specifically on what was going on. If he were getting up to answer the phone because he got a call to report to the court. And if not, if you're just going to the bathroom because you need to go to the bathroom, yes or no, coverage under the statute or not? It doesn't seem likely, but that's a determination that the Secretary of Labor would make. Okay, and that's my question. The district court thought that. At ER 60, his order says, quote, because Porter has a colorable claim under FECA, the court lasts jurisdiction over this Federal Tort Claims Act lawsuit and must dismiss it. My question is, is it your position that the judge could not make this determination? You said both. You said should. You said typically. And I'm asking you, is it really your position that the judge could not have made this determination? And if so, what's your authority? So yes, it is my position that the judge could not make that factual determination. The authority for that is the Figueroa case, again, the REAP case. They all talk about, you know, if it's the Secretary should make the initial determination of coverage to provide uniformity. You're doing the should thing again. Should, typically. But I'm asking whether or not he really lacked jurisdiction. And that's a black-white. Yes. That's a black-and-white question. Yes. On-off switch. Yes. What's your strongest authority for that position, please? The strongest authority for that position is the fact that plaintiff admitted he was actively pursuing the claim, that the case law makes clear that that determination. But, counsel, I'm asking for the legal authority. Okay. So that would be the... The judge cited Moe. Right. Do you want me to rely on Moe? What is it you want me to rely on for the notion that the judge didn't have the jurisdiction to make that call? Moe, REAP, Figueroa, they all say the same thing. Okay. This... I think what we have here, if the court looks at the plaintiff's opening brief, is really an attempt to elect remedies, right? And that's what the district court found as well. You don't get to have this election of remedies between, oh, I'd rather pursue an FTCA claim. But he's entitled to something. And that goes back to the question I asked that I'd like you to address. There's clearly an injury here that's significant. There's clearly negligence here. And so, is there a willingness on the part of the government to mediate this and get some closure to it instead of having a sort of angel stancing on a head of a pin jurisdictional argument? We participated in the Ninth Circuit mediation process. It was the plaintiff who... Well, that was then and this is now. Is the government willing to entertain mediation at this time? Sure. Okay. But just to clarify the election of remedies point... We understand that workers' competence is an exclusive remedy. Sure. And he doesn't... I think that you have a strong argument there. Okay. And I think the evidence shows that the plaintiff really did intend to pursue that claim until the United States filed a motion to dismiss and then thought, gee, I'd rather have the FTCA recovery. So I'm going to drop this. He cites in his opposition in the trial court the fact that the district court did have the authority to stay proceedings while the FICA process wound itself out. He knew that. Instead, they elected strategically to drop the FICA claim and try and go down the FTCA  And that's pretty clearly impermissible. But the FICA court said dismiss the claim because there was no injury, but there's clearly an injury. They dismissed it because he failed to provide any evidence in support. He filed the initial document, didn't provide any evidence. They sent him a request. He says he didn't file the initial document and it's not signed. We don't know who filed it. It wouldn't be unusual for an employer to file one for sure. But is it right to go back to Judge Ward's last point that he didn't participate at all in the workers' comp process? No. Because he certainly appealed once he got that initial denial for the lack of evidence. He filed an appeal. He did it timely. And then dismissed that appeal, I think. Correct. After the United States filed its motion to dismiss and he thought that it was going to preclude his FTCA claim. This court has any other questions? I'm happy to answer them. I don't believe that we do. Thank you. Thank you. Mr. Reiner. Thank you, Your Honor. I just wanted to bring forth a couple of points. I think the court may have already determined them. Porter did not file the initial FTCA claim. The only time he knew that one was even in process is when he got the denial letter saying you didn't provide any supporting information, which obviously he couldn't do. Yes, but what's difficult for you in this argument is I think the government has a fair point that it did seem to be shifting sands. You took inconsistent positions. You did appeal the workers' comp dismissal and she's absolutely right that workers' comp is exclusive and you can't elect remedies, right? Those are black letter rules. That's correct. And we were not trying to elect remedies as we did not initiate the FTCA claim in the first place. Yes, but, counsel, you've also argued to us here that you always knew that it was a federal tort claim. I'm sorry, a federal court? You mean a federal tort claim. Oh, a tort claim. I'm sorry. And yet you appealed the workers' comp. So it is the picture that is presented opposing counsel's right. It's a pretty inconsistent picture. Again, Your Honor, we weren't trying to be inconsistent. We had initiated the FTCA claim before we ever knew there was a FECA claim out there. We dismissed the FECA claim because we had initiated the FTCA claim first and only discovered there was even the existence of an FECA claim well into that litigation. And so you appealed the dismissal because? We appealed the dismissal because we also don't feel it's an FECA claim. It's not a substantial question. I mean, it's not just colorable, the law. And Riep and Moe also speak to substantial. I mean, you appealed the dismissal of the workers' comp claim because? Once this case was dismissed, I believe a FECA appeal was filed by a different law firm, not us. Okay. And if the court has no further questions? I don't believe that we do. Thank you. Thank you, Your Honor. The case just argued is submitted and we appreciate both counsels.
judges: Wardlaw, Graber, Christen